HEIDENHAIN CORPORATION, Indiv. and on Behalf of All Others Similarly Situated, Plaintiff-Appellant, v. LYNN QUIGLEY DOHERTY, Director, the Department of Employment Security, Defendant-Appellee.

First District (4th Division)   No. 1—96—1781

Opinion filed May 29, 1997.

Much, Shelist, Freed, Denenberg, Ament, Bell & Rubenstein, P.C., of Chicago (Michael J. Freed, Anthony C. Valiulis, and Wendy B. Kahn, of counsel), for appellant.

James E. Ryan, Attorney General, of Chicago (Barbara A. Preiner, Solicitor General, and Michael P. Doyle, Assistant Attorney General, of counsel), for appellee.

PRESIDING JUSTICE WOLFSON delivered the opinion of the court:

This case is about the way the Illinois Department of Employment Security (IDES) treats corporate overpayments of unemployment insurance assessments.

The Heidenhain Corporation overpaid. First, it received a credit for the overpayment, later the credit was removed. When Heidenhain discovered it had lost its credit, it complained to the IDES Direc-

tor. The Director would not hear the claim because Heidenhain waited too long.

Heidenhain sued the Director. The suit was dismissed by the trial court because Heidenhain did not pursue its administrative remedies. Heidenhain appeals that dismissal. We affirm.

FACTS

The plaintiff-appellant in this case is Heidenhain Corporation (Heidenhain). The defendant-appellee is Lynn Quigley Doherty (the Director), the Director of the Illinois Department of Employment Security (the Department).

Heidenhain sued the Director in a class action suit. It contended that the Director had improperly refused to return to it and other class members credits that the Department had previously given them. It claimed the Department had taken away the credits without notice or opportunity to be heard.

The plaintiff alleged the following facts.

Occasionally, employers overpay their unemployment insurance assessment because of mathematical errors. Before January 1, 1988, if the Department discovered this error, it automatically adjusted the account, crediting the overpayment to a later quarter.

If an employer later underpaid its assessment, the Department used the credit to make up the difference. Otherwise, the Department rolled over the credit to the next quarter. Possibly, the credit rolled over and remained in an employer's account for years. The accounts were adjusted to reflect these credits.

The employers did not have to take any action to earn these credits. The Department never told the employers the credits were in their accounts. Unless the employers discovered their earlier errors, they would not know about the credits.

The calculations that led to these credits were not disputed. The employers did not attempt to get refunds.

In 1988, the procedure changed. A new law required the Director to pay interest on refunds of "erroneously paid contributions." The law also required the Director to "quarterly furnish each employer with a statement of credit balances in the employer's account" starting after January 1, 1988. 820 ILCS 405/2201.1 (West 1992). At this point, the Department stopped automatically giving and rolling over credits. It did not notify the employers.

Starting on January 1, 1988, the Director changed the Department's position concerning the application of the three-year limitation described in section 2201 of the Unemployment Insurance Act (820 ILCS 405/2201 (West 1992)). Before this time, the Illinois

Unemployment Insurance Act (the Act) (820 ILCS 405/100 *et seq.* (West 1992)) provided a formal mechanism for employers to recoup disputed overpayments. The employers had three years to file any claim. The mechanism was used only for disputed claims.

After January 1, 1988, the Director applied the three-year limit to undisputed overpayments. Those employers who had credit because of their mathematical errors permanently lost those credits after three years if they did not file a claim with the Director.

Heidenhain lost $15,000 in credit it had earned before January 1, 1988. It contends it did not know it had earned the credit. The credit was removed from Heidenhain's account after January 1, 1988.

Heidenhain did not discover it had overpaid its contribution until 1994. As soon as Heidenhain became aware of this, it demanded that the Department refund the credits. The Director refused. Heidenhain filed a formal request for a refund with the Department. The Director rejected this claim because it was filed outside the three-year limit. In its report, the Director's representative said because the claim was filed past the limit, the Director had no power to act.

Heidenhain did not pursue any other administrative remedy. Nor did it seek administrative review of the Department's rejection of its claim. Instead, it filed a lawsuit in the circuit court. The Director moved to dismiss, contending that the claim was barred because Heidenhain failed to pursue all administrative remedies. Heidenhain claimed it did not need to exhaust all administrative remedies because the Director lacked jurisdiction to hear its case. Heidenhain argued that either the authorizing statute did not apply to its claim or that the Director lacked jurisdiction because more than three years had passed. The trial court granted the Director's section 2—619 motion to dismiss. 735 ILCS 5/2—619 (West 1992). Heidenhain appeals.

DECISION

Heidenhain contends it is not seeking a refund of any overpayments it made, but is asking for a return of the credits that the Department had already put into its account and then took out. That being true, says Heidenhain, this case does not fall within the authority of the Director or section 2201 of the Act. Since the Director had no authority to act, the reasoning goes, it was not necessary to pursue administrative remedies before the Director or in court. This independent lawsuit, then, was the only proper way to proceed.

True, if the Director never had subject matter jurisdiction to consider Heidenhain's claim, Heidenhain's only recourse would have been a new action in the circuit court. See *Landfill, Inc. v. Pollution Control Board*, 74 Ill. 2d 541, 549-51, 387 N.E.2d 258 (1978).

After examining Heidenhain's complaint in light of the provisions of section 2201, we are convinced the Director had subject matter jurisdiction in the matter until the time for hearing it ran out. Heidenhain's restatement of the issue is nothing more than an attempted end run around the Administrative Review Law. 735 ILCS 5/3—101 through 3—113 (West 1994).

The relevant part of section 2201 provides:

> "Not later than 3 years after the date upon which any contributions, interest or penalties thereon were paid, an employing unit which has paid such contributions, interest or penalties thereon erroneously, may file a claim with the Director for an adjustment thereof in connection with subsequent contribution payments, or for a refund thereof where such adjustment cannot be made ***." 820 ILCS 405/2201 (West 1992).

In its prayer for relief, Heidenhain asks that the Director be required "to refund to the class all such credits and overpayments, plus interest." Throughout its complaint, Heidenhain speaks of its entitlement to "adjustments or refunds." In this appeal, however, Heidenhain contends it is suing for a return of its credits to its account. That, says Heidenhain, is something different than seeking adjustments or refunds.

We do not see the difference. Using creative terminology does not change the substance of the relief sought. It is the same relief Heidenhain asked for in June 1994, when it demanded that the Director give it an appropriate adjustment or refund. If the Director were to return a credit to an employer's account, that would be an "adjustment" under the statute. When Heidenhain realized the time for seeking adjustment or refund had run out, it abandoned the settled way of challenging an administrative action and filed this lawsuit.

The amounts in dispute reflect erroneous payments by employers. Section 2201 is directed at those overpayments. It does not distinguish between disputed and undisputed overpayments. The overpayments never were correct. They always were too high. When the new Act went into effect in 1988, granting interest on overpayments and requiring quarterly reports, the rules changed. Perhaps the Department could have done more to announce changes in procedures, but the employers had ample time to find out what would happen to their overpayments under the new statute.

The Director had subject matter jurisdiction for three years after the making of an overpayment. Judicial review of administrative decisions is barred for jurisdictional reasons once the time for filing a complaint for review has passed. *Fredman Brothers Furniture Co. v. Department of Revenue*, 109 Ill. 2d 202, 211, 486 N.E.2d 893 (1985).

Heidenhain cannot successfully claim the Director's lack of jurisdiction authorizes an independent lawsuit. If that were true, every party who fails to file a timely claim under the Administrative Review Law would be free to challenge an administrative decision simply by filing a lawsuit based on a lack of agency jurisdiction.

Our supreme court has spoken about the policy behind requiring a party to pursue its administrative remedies:

> "Requiring the exhaustion of remedies allows the administrative agency to fully develop and consider the facts of the cause before it; it allows the agency to utilize its expertise; and it allows the aggrieved party to ultimately succeed before the agency, making judicial review unnecessary. [Citations.] The doctrine also helps protect agency processes from impairment by avoidable interruptions, allows the agency to correct its own errors, and conserves valuable judicial time by avoiding piecemeal appeals. [Citation.]" *Castaneda v. Illinois Human Rights Comm'n*, 132 Ill. 2d 304, 308, 547 N.E.2d 437 (1989).

The Administrative Review Law (735 ILCS 5/3—101 through 3—113 (West 1994)) was " 'an innovation and departure from the common law, [and] the procedures it establishes must be pursued.' " *Fredman Brothers*, 109 Ill. 2d at 210, quoting *Winston v. Zoning Board of Appeals*, 407 Ill. 588, 595, 95 N.E.2d 864 (1950). The law is clear: "unless review is sought of an administrative decision *within the time* and in the manner provided therein, the parties to the proceeding before the administrative agency shall be barred from obtaining a judicial review." (Emphasis in original.) *Fredman Brothers*, 109 Ill. 2d at 210-11.

We realize there are exceptions to the general requirement of strict compliance with the exhaustion of remedies doctrine: for example, where an agency cannot provide an adequate remedy, or where no issues of fact or agency expertise exist, or where the agency's jurisdiction is attacked because it is not authorized by statute. *Castaneda*, 132 Ill. 2d at 308-09. Heidenhain does not come within these or any other established exceptions. More importantly, it is not seeking judicial review of an administrative decision. Instead, this lawsuit purports to be a claim for damages on a tort theory. We see it as an attempt to avoid the impact of a missed deadline for action.

The fact that Heidenhain frames this lawsuit as a class action does not alter the conclusion we have reached. The issues raised in the purported class action are the same as those presented to the Director by Heidenhain. We have said:

> "If [the plaintiff] cannot prevail in challenging the manner in which [the Department] is applying the law in an administrative

review procedure, it cannot have the same issues decided in a class action. An administrative review judgment cannot be avoided by bringing a subsequent class action." *Midland Hotel Corp. v. Director of Employment Security*, 282 Ill. App. 3d 312, 321, 668 N.E.2d 82 (1996).

Another way of avoiding the exhaustion of remedies doctrine is to establish that the statute at issue is unconstitutional on its face. *Castaneda*, 132 Ill. 2d at 308-09. But Heidenhain is not making a facial invalidity attack. It is claiming section 2201 was applied to it in an unconstitutional manner. In that case, "the party must first seek relief through the administrative remedies provided." *Phillips v. Graham*, 86 Ill. 2d 274, 289, 427 N.E.2d 550 (1981).

In short, we do not believe Heidenhain has an independent lawsuit for damages. Stripped of excess verbiage, Heidenhain's lawsuit is an attempt to obtain a refund of the company's overpayments. Failure to exhaust administrative remedies is fatal in this case. We believe the trial court was correct when it dismissed the lawsuit.

## CONCLUSION

For the reasons stated, we affirm the trial court's order dismissing the plaintiff's lawsuit.

Affirmed.

McNAMARA and CERDA, JJ., concur.