No. 2--99--1372

_________________________________________________________________

1 December 2000

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_________________________________________________________________

SUSANNE L. VALENTINO, ) Appeal from the Circuit

) Court of Du Page County.

Plaintiff-Appellant, )

)

v. ) No. 99--L--357

)

GLENDALE NISSAN, INC., NISSAN ) 

MOTOR CORPORATION, AND JOSEPH R.)

ALESSI, Indiv., ) 

)

Defendants )

) Honorable

(First Bank, a/k/a First Bank/ ) Edward R. Duncan, Jr.,

U.S. Bank, Defendant-Appellee). ) Judge, Presiding.

_________________________________________________________________

JUSTICE INGLIS delivered the opinion of the court:

Plaintiff, Susanne L. Valentino, appeals the judgment of the circuit court of Du Page County granting the motion of defendant First Bank, a/k/a First Bank/U.S. Bank (defendant), to dismiss counts VII and VIII of plaintiff’s complaint.  
We affirm.

In February
 1998, plaintiff purchased a 1996 Nissan Maxima from Glendale Nissan, Inc.  Plaintiff signed a retail installment agreement to finance the purchase.  The agreement was assigned to defendant.  Under the terms of the agreement, defendant was granted a purchase-money security interest in the car.  The retail installment agreement contained the following provisions:

"SECURITY INTERESTS: Seller is granted a purchase-money security interest in the motor vehicle described above and all accessions under the Illinois Uniform Commercial Code until the Total of Payments and all future indebtedness for taxes, liens, repairs and insurance premiums advanced by holder hereunder are paid in full.

Security: You are giving a security interest in the goods being purchased and in any moneys, credits or other property of yours in the possession of the Assignee, on deposit or otherwise.

Upon the occurrence of any event of default, the holder of this contract shall have the rights and remedies provided by Article 9 of the Illinois Uniform Commercial Code including, but not by way of limitation, the rights of the holder (a) to take immediate possession of the motor vehicle, with or without judicial process, and for such purpose, to enter upon the premises where it may be located."

We note that a copy of the certificate of title
 is not part of the record on appeal.  Defendant claims that it perfected its lien in accordance with the requirements of the Illinois Vehicle Code (625 ILCS 5/3--202 (West 1998)) and is named as the first lienholder on the certificate of title.  Plaintiff does not dispute this fact.

In December 1998, plaintiff’s counsel sent correspondence to  Glendale Nissan, Nissan Motor Corporation, and defendant informing them that Glendale Nissan may have violated the Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/1 
et
 
seq.
 (West 1998)).  The letter reaffirmed plaintiff’s previous revocation of acceptance and informed defendant that she would cease making payments on the retail installment contract.  Shortly thereafter, plaintiff ceased paying her monthly installment payments to defendant, and on March 10, 1999, defendant repossessed the car.

Plaintiff filed a complaint on March 31, 1999, against the dealer, manufacturer, and defendant for breach of warranty, revocation of acceptance, cancellation of the retail installment contract, fraud, and consumer fraud.  Relevant to this case, counts VII and VIII alleged conversion and a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act
 solely
 against defendant.  

Defendant filed a motion to dismiss counts VII and VIII pursuant to section 2--619
 of the Code of Civil Procedure (735 ILCS 5/2--619 (West 1998)).  Defendant argued that by failing to make the required monthly installment payments plaintiff was in default under the contract and defendant had the right to repossess the car pursuant to the terms of the contract and Article 9 of the Uniform Commercial Code-Secured Transactions (810 ILCS 5/9--101 
et
 
seq.
 (West 1998)).  Defendant also argued that, under the terms of the contract and Article 9, it possessed a purchase-money security interest that is superior to the security interest claimed by plaintiff.  Because defendant had the right to repossess the car, defendant argued that there could be no claim for conversion or a violation of 
the Illinois Consumer Fraud and Deceptive Business Practices Act.  The trial court agreed and granted defendant’s section 2--619 motion to dismiss counts VII and VIII of plaintiff’s complaint.  Plaintiff timely appeals. 

The purpose of a section 2--619 motion to dismiss is to afford litigants a means to dispose of issues of law and easily proved issues of fact at the outset of a case, reserving disputed questions of fact for a jury trial.  
Petty v. Crowell
, 306 Ill. App. 3d 774, 775 (1999).  In addressing a section 2--619 motion, a court takes all well-pleaded facts in the complaint as true, and only the complaint’s legal sufficiency is contested.    
Petty
, 306 Ill. App. 3d at 776.  We review the granting of a section 2--619 motion 
de
 
novo
.  
Petty
, 306 Ill. App. 3d at 776.
  

On appeal, plaintiff argues that she has a possessory security interest in the car under section 2--711(3) of the Uniform Commercial Code (UCC) (810 ILCS 5/2--711(3) (West 1998)).  Plaintiff further contends that her section 2--711(3) security interest
 has priority over defendant’s purchase-money security interest based on section 433.2 of the Code of Federal Regulations (FTC Rule) (16 C.F.R. §433.2 (1975)), which is embodied in the retail installment contract. 

The FTC Rule provides that a consumer credit contract entered into in connection with the sale or lease of goods or services to consumers must contain the following provision:

"Any holder of this consumer credit contract is subject to all claims and defenses which the debtor could assert against the seller of goods or services obtained pursuant hereto or with the proceeds hereof.  Recovery hereunder by the debtor shall not exceed amounts paid by the debtor hereunder."  16 C.F.R. §433.2
 (1975).

Plaintiff asserts that the FTC Rule provided in the retail installment contract placed defendant, as assignee, on notice that its rights under the agreement are subject to all defenses and/or claims that plaintiff has against the dealer.  Plaintiff asserts
 that, because nonpayment is a recognized right of the consumer against the dealer and defendant stands in the shoes of the dealer, defendant’s purchase-money security interest would be "subject to" her claim. 

Defendant contends that plaintiff’s failure to make the payments under the retail installment contract constituted a default under the terms of the contract.  Pursuant to the UCC and the terms of the contract, defendant, upon default
, had the right to take immediate possession of the car.  Defendant further contends that any alleged security interest of plaintiff resulting from her revocation of acceptance is subordinate to defendant’s purchase-money security interest, which arises under the Illinois Vehicle Code (see 625 ILCS 5/3--202 (West 1998)) and the UCC.  

Defendant relies on
 
Ambre v. Joe Madden Ford
, 881 F. Supp. 1182, 1184 (N.D. Ill. 1995), in support of its argument.  Similar to the present case, the plaintiff in
 
Ambre
 revoked acceptance of her car and filed a suit against the car dealer and the creditor, Bank One, and ceased paying her monthly payments under a retail installment contract.  Although Bank One did not repossess the car, it requested the court to direct the plaintiff to turn over the car to it based upon the plaintiff’s failure to pay the monthly payments.  As plaintiff in the present case claims here, the plaintiff in 
Ambre
 asserted that Bank One was not entitled to repossess the car upon default because the FTC Rule and section 2--

711(3) of the UCC gave her a possessory security interest in the car that had priority over Bank One’s purchase-money security interest.  The court found that the plaintiff’s revocation of acceptance had no bearing on her status of default under the retail installment contract and rejected the plaintiff’s arguments for several reasons.  
Ambre
, 881 F. Supp. at 1187.
  

The court first rejected the argument that the FTC Rule determines the priority of security interests or otherwise subordinates a creditor’s purchase-money security interest to the security interest of a buyer created under section 2--711(3) of the UCC.  The court observed that the purpose of the FTC Rule was to modify how the holder-in-due-course rule affected consumer purchases of goods or credit.  
Ambre
,  881 F. Supp. at 1184-85.  The court noted that the FTC Rule does not modify the priority of security interests in the purchased goods, and it does not create new rights or defenses.  The court found that the phrase "claims and defenses" merely "incorporates those things which, as a matter of other applicable law, constitute legally sufficient claims and defenses in a sales transaction."   
Ambre
,  881 F. Supp. at 1185.
  The court reasoned that, from an economic perspective, if the FTC Rule were to subordinate a creditor’s security interest to that held by a buyer, it would have a significant, adverse effect on the availability of consumer credit.  The creditor’s right to take collateral securing the loan would be severely restricted, resulting in a substantial risk by the creditor in making a loan.
  
Ambre
,  881 F. Supp. at 1185 n.6.

The court next held that the priority of security interests is determined exclusively by the Illinois Administrative Code (see 92 Ill. Adm. Code §1010.130 (1998))
.  The Administrative Code provides:

"Exclusiveness of Lien on Certificate of Title

Liens and security interests in any vehicle for which an Illinois Certificate of Title has been issued, may only be perfected as provided in the [Illinois Vehicle Code], and any other interests whether sought to be perfected by recording or under the provisions of the [UCC], shall not supersede the notation of a lien on a Certificate of Title nor serve as a valid lien or security interest if no lien is noted on such Certificate of Title."  92 Ill. Adm. Code §1010.130 (1998).  

In 
Ambre
,
 Bank One was recorded as the only lienholder on the certificate of title.  The court concluded that the plaintiff’s security interest in the car under section 2--711(3) of the UCC was not enforceable as to Bank One’s security interest because it was not recorded on the certificate of title
.  The court concluded that the plaintiff’s security interest could not supersede Bank One’s perfected security interest.  
Ambre
, 881 F. Supp. at 1186.

The court next held that, even if the priority of the security interests were to be resolved under the provisions of the UCC, Bank One’s security interest would still have priority.  
Ambre
, 881 F. Supp. at 1186.  Bank One’s lien was governed by Article 9 of the UCC regarding secured transactions (810 ILCS 5/9--101 
et
 
seq.
 (West 1998)).  Under section 9--113 of the UCC (810 ILCS 5/9--113 (West 1998)), a security interest arising under Article 2 of the UCC regarding sales (see 810 ILCS 5/2-711(3) (West 1998)) is "subject to" the provisions of Article 9.  The court found that because an Article 2 security interest is subordinated to the security interest arising under Article 9, Article 9's priority scheme governs.  
Ambre
, 881 F. Supp. at 1186.
  The court noted that section 9--312(4) sets forth the priority scheme among conflicting security interests as follows: 

"A purchase money security interest in collateral other than inventory has priority over a conflicting security interest in the same collateral or its proceeds if the purchase money security interest is perfected at the time the debtor receives possession of the collateral or within 20 days thereafter."  810 ILCS 5/9--312(4) (West 1998).

The court found that, under this section, Bank One’s security interest would have priority provided it was perfected within 20 days after the plaintiff took possession of the car.  
Ambre
, 881 F. Supp. at 1186.
  In conclusion, the court held that Bank One was entitled to possession of the car in accordance with its perfected security interest and ordered the plaintiff to deliver the car to Bank One.  
Ambre
, 881 F. Supp. at 1187.

We agree with the reasoning of 
Ambre
 and similarly
 reject plaintiff’s priority argument.  Here, defendant held a lien, as noted on the certificate of title, and, pursuant to the Illinois Administrative Code (92 Ill. Adm. Code §1010.130 (1998))
, plaintiff’s UCC-based security interest cannot supersede defendant’s perfected security interest.  Further, 
even if the priority of the security interests were to be resolved under the provisions of the UCC, defendant’s security interest would still have priority.  The purchase-money security interest held by defendant pursuant to the terms of the contract and the UCC (see 810 ILCS 5/9--107 (West 1998)) had priority over conflicting interests in the same collateral.
  Therefore, defendant had the right to repossess the car.

Plaintiff contends that, because section 2--711(3) grants her the power to hold or sell the car until defendant pays her portion of her security interest, her security interest has priority over that of defendant.  We fail to see the merits of this argument.  Plaintiff omits the fact that her security interest in the revoked goods represents the amount of principal paid through her monthly payments.  810 ILCS 5/2--711(3) (West 1998).  Thus, if she continued to maintain possession of the car or to resell it, she would have a duty to "use reasonable care in the custody and preservation of collateral in [her] possession."  810 ILCS 5/9--207 (West 1998).  If she used the car for any other reason than preservation after she revoked her acceptance, plaintiff would have to reimburse defendant with a reasonable sum commensurate with the amount of her usage, including any depreciation in value resulting therefrom.  In addition, plaintiff could face the prospect of nullifying her revocation and corresponding security interest.  See 
Ambre
, 881 F. Supp. at 1187.

Plaintiff contends that the committee comments to section 9--

113(c) provide that, when a buyer with a security interest under section 2--711(3) is in possession of a car, the default provisions of Article 9 do not apply and the security interest under section 2--711(3) is controlling.  We disagree.  Section 9--113(c) provides that the rights of the secured party on default by the debtor are governed by Article 2 in the case of a security interest arising 
solely
 under Article 2.  810 ILCS 5/9--113(c) (West 1998).  However, when there are conflicting security interests, as in this case, they must be addressed under Article 9.

We find plaintiff’s reliance on the cases cited in support of her argument to be misplaced.  Plaintiff cites 
Ford Motor Credit Co. v. Caiazzo
, 387 Pa. Super. 574, 564 A.2d 931 (1989), for the proposition that a creditor does not have the right to repossess a vehicle if the buyer has revoked acceptance of the goods.  In that case, the court held that the plaintiffs had the right to assert their section 2--711(3) security interest as a potential counterclaim to Ford Motor Credit Company’s action for replevin.  The decision never addressed who had the right to possess the vehicle.  Nor did it address the validity of the UCC lien against the motor vehicle collateral or the priority of the UCC lien as compared to the assignee’s possessory security interest.  The court simply reinstated the plaintiffs’ dismissed counterclaim.

Plaintiff cites 
Felde v. Chrysler Credit Corp.
, 219 Ill. App. 3d 530 (1991), in support of her argument that the FTC Rule entitles a consumer to cease making payments under a retail installment contract and avoid being in default.  Plaintiff bases this assertion on the court’s statement that the FTC Rule was enacted to "restore the right of nonpayment to the consumer by eliminating the creditor’s holder-in-due-course status."  
Felde
, 219 Ill. App. 3d at 536.  We do not construe this language to mean that a consumer has the right to cease payment and retain possession of the car regardless of a superior security interest.  The FTC Rule does not abolish the lender’s right to possess the car pursuant to a superior security interest.  The rule merely abrogates the holder-in-due-course defense previously available to the lender. 

In 
Drew v. Chrysler Credit Corp.
, 596 F. Supp. 1371 (W.D. Mo. 1984), the plaintiff made all of her required payments on the car and she held back money that she was entitled to as a setoff under a Missouri statute
 that provided that setoffs are assertable against the creditor as well as the seller.   Because the plaintiff made all of her required payments, the court concluded that the creditor wrongfully repossessed the car.  The court never determined that the creditor’s repossession was improper because the FTC Rule prevents the consumer from being in default when he or she fails to make required payments. 

Plaintiff argues that, even if defendant had the right to repossess the car, it still committed conversion because it could not repossess the car unless it first resorted to a judicial determination of its right to repossess the car in order
 to avoid a breach of peace.  Plaintiff misconstrues the applicable statute.  Section 9--503 of the UCC provides that a secured party has on default the right to take possession of the collateral and may proceed 
without
 judicial process if this can be done without breach of the peace.  810 ILCS 5/9--503 (West 1998).  

Plaintiff argues that, once she notified defendant that she objected to repossession of the car, defendant could not resort to "self-help" tactics without causing a breach of the peace.
  We do not believe that the mere recitation in a letter
 of an objection to repossession gives rise to a breach of the peace upon repossession.  A breach of the peace is defined as conduct that invites or is likely to invite immediate public turbulence, or that leads to or is likely to lead to an immediate loss of public order and tranquility.  
Chrysler Credit Corp. v. Koontz
, 277 Ill. App. 3d 1078 (1996).  
There is no evidence in the record that any action occurred at the time of or immediately prior to the repossession of the car amounting to a breach of the peace.

In conclusion, we hold that defendant possessed a perfected security interest in the car
 that had priority over plaintiff’s security interest, entitling defendant to repossess the car upon default, without the need to resort to judicial intervention.  Accordingly, we hold that the trial court properly dismissed count VII of plaintiff’s complaint alleging conversion against defendant.  The absence of wrongful conduct similarly renders proper the trial court’s dismissal of count VIII alleging a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act.

For the foregoing reasons, we affirm the judgment of the circuit court of Du Page County dismissing counts VII and VIII of plaintiff’s complaint.

Affirmed.

RAPP and GALASSO, JJ., concur.